UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBERT J. CLAYBRONE,

     Plaintiff,

v.                                          Case No. 3:12cv381/MCR/CJK

GOLDRING GULF DISTRIBUTING,

     Defendant.

_____/

ORDER and
REPORT AND RECOMMENDATION

     This matter, filed under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e to 2000e-17, is before the court on defendant's motion for summary judgment (doc. 50) and plaintiff's response in opposition (doc. 58).  Defendant has also filed a motion to strike (doc. 59) Exhibit A of plaintiff's response, which plaintiff opposes (doc. 62).

     The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(E).  Having fully considered the parties' submissions, the record, and the relevant case law, the undersigned orders that defendant's motion to strike be granted and recommends that defendant's motion for summary judgment be granted.

BACKGROUND AND PROCEDURAL HISTORY

     On August 7, 2012, *pro se* plaintiff Robert J. Claybrone initiated this action by filing an employment discrimination complaint against defendant Goldring Gulf Distributing Company, LLC ("Goldring").  (Doc. 1).  Plaintiff's complaint raised

claims of race discrimination, race retaliation, and age discrimination. (*Id.*, p. 10). On January 27, 2014, defendant filed its answer to the complaint and moved to dismiss plaintiff's age discrimination claim.   (Doc. 14).   The court granted defendant's motion to dismiss, finding Claybrone failed to file a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC") before bringing suit. (Docs. 18, 20).

Discovery commenced on plaintiff's remaining claims on April 1, 2014. (Doc. 19).  On November 13, 2014, defendant sent a request for admissions to plaintiff. (Doc 45, p. 2).  Plaintiff failed to respond to the request for admissions within the time allotted by the Federal Rules of Civil Procedure.[1] (*Id.*, p. 2-3).  Defendant moved to have the requests deemed admitted on December 23, 2014.  (Doc. 45).  The same day, defendant received plaintiff's answers to the requested admissions.  (Doc. 46-3, p. 1-3).   Defendant moved to strike plaintiff's answers on January 12, 2015, contending plaintiff failed to appropriately respond to the request for admissions under Federal Rule of Civil Procedure 36 because he did not specifically admit or deny the matters set forth in the request. (Doc. 46).  The undersigned, agreeing the answers were inadequate, granted plaintiff ten days to either show cause why his answers should not be stricken or amend his answers to comply with Rule 36.  (Doc. 49).  Plaintiff's response to the court's show cause order did not explain why his answers were adequate, nor did he amend any answers. (Doc. 51).  Accordingly, the court granted defendant's motion to strike and motion to deem facts admitted.  (Doc.

---

[1] *See* Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.").

53).

On January 27, 2015, defendant filed the motion for summary judgment. (Doc. 50). In support of the motion, defendant attached an affidavit from its human resource director, A.J. Schultheis. (*Id.*). The court advised plaintiff of the standards governing a ruling on a motion for summary judgment and granted him additional time to respond. (Doc. 52). Plaintiff's response to defendant's motion for summary judgment claimed Schultheis' affidavit was "untrue"; plaintiff also attached the now-disputed Exhibit A to the response. (Doc. 58). Exhibit A is the first page of a decision from an Appeals Referee with the Florida Department of Economic Opportunity ("FDEO"). (Doc. 58, p. 5). The Appeals Referee ruled plaintiff was qualified for receipt of unemployment benefits, finding he was not discharged for cause, nor did he resign without good cause. (Doc. 59, p. 10-11). Defendant subsequently moved to strike plaintiff's Exhibit A. (Doc. 59). In support of its motion, defendant attached part of plaintiff's deposition, as well as the full decision from the FDEO. (Doc. 59, p. 10-15). On March 24, 2015, plaintiff responded to the motion to strike, claiming the defendant made inconsistent statements concerning plaintiff's reports of discrimination. (Doc. 62).

## MOTION TO STRIKE

Before considering defendant's motion for summary judgment, the undersigned will address defendant's motion to strike plaintiff's Exhibit A–the FDEO decision. Plaintiff contends the FDEO's decision establishes that Schultheis' affidavit is "untrue." (Doc. 58). Plaintiff, therefore, claims a dispute of material fact exists and defendant's motion for summary judgment should be denied. (*Id.*). Defendant contends the FDEO's decision should be disregarded because it contains conclusions

of law and is internally inconsistent.  (Doc. 59, p. 6-8).

In support of its motion to strike, defendant analogizes the FDEO's decision to findings of the Equal Employment Opportunity Commission ("EEOC"), which are not admissible as evidence in some circumstances.  The EEOC is responsible for:

> enforcing federal laws that make it illegal to discriminate against a job applicant or an employee because of the person's race, color, religion, sex (including pregnancy), national origin, age (40 or older), disability or genetic information. . . . The EEOC has the authority to investigate charges of discrimination against employers who are covered by the law.

*See* Equal Employment Opportunity Commission, http://www.eeoc.gov/eeoc/ (last visited August 24, 2015).

Similarly, the FDEO is responsible for:

> provid[ing] equal opportunity in employment, services, and benefits, without regard to race, color, religion, sex, national origin, age, disability, marital status, genetic information, or political affiliation or belief, in compliance with federal and state laws, orders, and regulations. . . . [Once a complaint of discrimination is filed,] [a]n internal investigation of the charges will be conducted in accordance with the Department's Discrimination Complaint Procedures.

*See* Florida Department of Economic Opportunity, http://www.floridajobs.org/civilrights/moa/tabs/2-B.pdf (last visited August 24, 2015).  Given the similarities between the FDEO and the EEOC, the undersigned agrees that case law discussing the admissibility of EEOC findings is helpful for determining whether the FDEO's decision should be considered when ruling on defendant's motion for summary judgment.  *See Barfield v. Orange Cnty.*, 911 F.2d 644, 650 n.7 (11th Cir. 1990) (noting that discussion of EEOC report's admissibility was also applicable to report from Florida Unemployment Appeals Commission

because Federal Rule of Evidence 803 makes no distinction between federal and non-federal agencies).

In the Eleventh Circuit, "EEOC cause determinations are generally admissible under the hearsay exception for public records." *Young v. FedEx Express*, 432 F. App'x 915, 917 (11th Cir. 2011) (citing *Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1554 n.7 (11th Cir. 1995)); *see also* Fed. R. Evid. 803(8) (public office's record of factual findings from a legally authorized investigation not excluded by the rule against hearsay when "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness"). "However, the admissibility of EEOC findings is subject to the sound discretion of the district court, and a court can refuse to admit an EEOC report if it 'contains legal conclusions in addition to its factual content,' or if it presents issues of trustworthiness." *Young*, 432 F. App'x at 917 (quoting *Barfield*, 911 F.2d at 650).

A court must also consider an EEOC report's potential impact on the jury. *See Barfield*, 911 F.2d at 649 ("The admission of an EEOC report . . . may be much more likely to present the danger of creating unfair prejudice in the minds of the jury than in the mind of the trial judge, who is well aware of the limits and vagaries of administrative determinations and better able to assign the report appropriate weight and no more."); *Montgomery v. Brickell Place Condo. Ass'n,* No. 11-24316-CIV, 2012 WL 1203837 at *1 (S.D. Fla. April 11, 2012) (citing *Barfield*, 911 F.2d at 650) ("[T]he Eleventh Circuit has instructed trial courts to examine EEOC letters on a case-by-case basis and to consider whether the letters contain legal conclusions, raise questions of trustworthiness or present problems under Federal Rule of Evidence 403."). Under the familiar standard of Federal Rule of Evidence 403, trial courts may

"exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury[.]" Under this directive, if the EEOC's investigatory findings are presented as conclusory statements without any explanation as to what evidence was considered and how it was determined credible, the court should not allow the findings into evidence. *Montgomery*, 2012 WL 1203837 at *1-2.

Although much of the case law focuses on the potential of EEOC findings to bias a jury, such findings may also be disregarded at the summary judgment stage. *See* Federal Rule of Civil Procedure 56(c)(2) ("A party may object that the material cited to support or dispute a fact [in summary judgment proceedings] cannot be presented in a form that would be admissible in evidence."); *Young v. FedEx Exp.*, 432 F. App'x 915 (11th Cir. 2011) (affirming district court's decision to exclude EEOC report from consideration on summary judgment because report lacked trustworthiness); *Mason v. Mitchell's Contracting Serv., LLC*, 816 F. Supp. 2d 1178, 1190-91 (S.D. Ala. 2011) ("[T]he court has wide discretion in determining the probative force of EEOC reports and determinations at summary judgment."). Thus, when ruling on a motion for summary judgment, the court is permitted, but not required, to consider a report from the EEOC or a similar state agency, like the FDEO.

In this action, the FDEO report, fleshed out further below, should be stricken because it offers no explanation for its findings, it fails to describe the evidence it considered, it contains legal conclusions, and it is internally inconsistent. The Appeals Referee's decision addresses "[w]hether the claimant was discharged for

misconduct connected with work or voluntarily left work without good cause[.]"[2] (Doc. 59, p. 10).   The report's "Findings of Fact" section reaches a number of conclusions.

According to the fact section of the FDEO decision, Claybrone's night-shift manager "frequently used the word 'nigger' in referring to the claimant and over the radio."[3]  (*Id.*).   Claybrone confronted the manager but the manager told him to "shut up."  (*Id.*).   Claybrone "realized the manager would not change," but "because he needed a job, he continued to work."  (*Id.*).   On March 4, 2011, Claybrone "received a warning for not filling out paperwork correctly.   At that meeting, the claimant brought up prejudice and discrimination."[4]   (*Id.*).   The general manager told Claybrone "to come to him with any such concerns," but the night-shift manger continued to use the n-word.  (*Id.*, p. 10-11).  On July 18, 2011, Claybrone submitted a notice of resignation.  (*Id.*, p. 11).

In a section titled "Conclusions of Law," the FDEO report states:

> The record reflects the claimant quit due to perceived racial prejudice and discrimination.   The evidence shows the claimant's supervisor used a derogatory racial term towards the claimant, indicative of hatred for the claimant's race.  Additionally, the supervisor continued to use this term towards the claimant after efforts were made to resolve

---

[2] The relevant portion of Florida law provides that good cause "includes only that cause attributable to the employing unit which would compel a reasonable employee to cease working[.]" Fla. Stat. § 443.101(1)(a)1.

[3] Throughout the remainder of this report and recommendation, the offensive term will be replaced by "n-word(s)."

[4] In his deposition testimony, Claybrone stated he did not complain to anyone about Chris Rutland's use of the n-word.  (Doc. 59, p. 14-15).  This testimony undermines the FDEO's findings of fact.

Case No. 3:12cv381/MCR/CJK

the issue.  The employer did not present any competent evidence to rebut the claimant's statements.  The claimant has shown good cause for quitting attributable to the employer due to a hostile work environment. The claimant is qualified for the receipt of benefits.[5]

(*Id.*).  Concerning Goldring's attempt to submit evidence to the FDEO, the Appeals Referee stated:

> Consideration is given to the employer's request to submit documentation supplementing the evidence presented by the claimant in support of his argument regarding a worker's compensation claim.  Also taken into consideration is the employer's request to submit into evidence the payouts of cases per hour to the claimant.  This evidence is considered irrelevant, repetitive, and inconsequential when considering the core issues involved in this case.

(*Id.*).  Although the FDEO's decision describes one type of evidence Goldring tried to present, it does not discuss the other evidence that was rejected.  In addition, the decision indicates Goldring's "testimony regarding these matters is considered competent."  (*Id.*).  The decision goes on to note that "[t]he hearing officer was presented with conflicting testimony regarding material issues of fact and is charged with resolving these conflicts."  (*Id.*).  After detailing the factors relevant to assessing the parties' credibility, the hearing officer found "the testimony of the employer to be more credible.  Therefore, material conflicts in the evidence are resolved in favor of the employer."  (*Id.*).  The decision, by now quite confusing, utterly fails to explain what the material conflicts were, and, relatedly, why it appears Claybrone's version of events was accepted as true despite Goldring being found more credible.

---

[5] The conclusion that Claybrone "quit due to *perceived* racial prejudice and discrimination" suggests the Appeals Referee was concerned with Claybrone's subjective response to his work environment.  (Doc. 59, p. 11) (emphasis added).

As defendant urges, the FDEO's decision is plagued by a number of problems. First, it does not describe what evidence either Claybrone or Goldring submitted at the hearing or why Goldring's evidence was rejected as "irrelevant" and as not speaking to the "core issues" of the case. (*Id.*). Next, the report lists factors used to assess credibility, yet does not explain what factors it used to determine each party's credibility nor the evidence used to support the factors. (*Id.*). Finally, the report fails to detail "the conflicting testimony regarding material issues of fact" or justify its resolution of the conflicting testimony. Based on its lack of detail and reasoning, the probative value of the FDEO report is substantially outweighed by its potential to prejudice defendant, confuse the issues, and mislead the jury. The undersigned, therefore, will strike the FDEO decision from the record.[6]

## LEGAL STANDARD AS TO SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an

---

[6] Alternatively, Goldring argues Claybrone's portion of the FDEO decision should be struck based on the sham affidavit rule. *See Santhuff v. Seitz*, 385 F. App'x 939 (11th Cir. 2010) (stating when an affidavit used in response to a motion for summary judgment directly contradicts prior deposition testimony in order to create a genuine issue of fact, the court can strike the affidavit). Because the court finds the FDEO decision should be struck on other grounds, the court need not address Goldring's sham affidavit argument.

otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *Id.* Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). Generally, a court must view the facts in the light most favorable to the non-moving party (here, plaintiff) and draw all reasonable inferences in favor of that party. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). Even so, "the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 869-70 (11th Cir. 2011). "A mere "scintilla" of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## FACTS

Plaintiff, an African-American male, began working for Goldring, a beverage distributor, in June of 2008. (Doc. 1, p. 4; doc. 50, Schultheis Aff. ¶ 3).[7] Plaintiff

---

[7] Typically, the nonmoving party may not rest upon only the allegations of his pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990). A *pro se* plaintiff's complaint, however, if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence. *See Murrell v. Bennett*,

worked the night shift as a warehouseman. (Schultheis Aff. ¶ 3). During his tenure at Goldring, Claybrone heard himself referred to as a [n-word] on two occasions. (Doc. 1, p. 4; doc. 45, p. 5). In May of 2011, plaintiff overheard night-shift supervisor Chris Rutland "refer to black people as [n-word]." (Doc. 1, p. 4). When plaintiff entered the room, Rutland said "[Claybrone] did not mind me referring to him as a [n-word] because black people refer to each other as [n-words] all the time." (*Id.*). On the second occasion, in June of 2011, Hispanic warehouseman John Moralaz asked plaintiff "what's up my [n-word]?" (*Id.*).

An annual performance review on January 26, 2010, assigned plaintiff a rating "'Below Target' as it pertained to his ability to work with others." (Schultheis Aff. ¶ 4). "Claybrone was advised that in order to bring his conduct within the appropriate level expected by Goldring, he should bring any complaints he had to the attention of management and not his co-workers." (*Id.*). On two subsequent occasions, plaintiff received warnings for inappropriate conduct. First, on September 7, 2010, plaintiff received a "verbal warning for not requesting assistance when he attempted to load a truck at the warehouse." (Schultheis Aff. ¶ 5). Then, on March 4, 2011, plaintiff "was given a second warning related to his conduct when he offended fellow co-workers and in doing so, he created a negative work environment." (*Id.* ¶ 6). Claybrone "refused to sign the Second Warning pursuant to Goldring's Policies [and] Procedures." (*Id.*). Plaintiff also complained about race discrimination to a general manager named Joey in March of 2011. (Doc. 1, p. 4, 10).

---

615 F.2d 306, 310 n. 5 (5th Cir. 1980). Nevertheless, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4).

As discussed previously, defendant's motion to deem facts admitted was granted.  (Docs. 45, 53).  The matters deemed admitted conclusively establish that, before plaintiff resigned from Goldring, he "told individuals that work for Defendant that [he was] moving to Atlanta to take a new job[.]"[8]  (Doc. 45, p. 5).  "[T]he reason [plaintiff] told individuals [he was] moving to Atlanta to take a new job was because he intended to resign from Defendant's company."  (*Id.*).  Plaintiff resigned from his position with Goldring on July 29, 2011.  (*Id.*).

A factual dispute remains as to whether plaintiff's resignation was voluntary.  Defendant contends plaintiff voluntarily resigned.  (Schultheis Aff. ¶ 7).  Plaintiff, however, states that Joey, the general manager, told plaintiff that, due to a "no call, no show,"[9] he could resign or be terminated.  (Doc. 1, p. 4).  Because the facts must be read in the light most favorable to plaintiff, the court must consider as true plaintiff's contention that he was forced to resign after being advised that if he did not

---

[8] As noted above, the court previously granted defendant's motion to have the request for admissions deemed admitted.  (Docs. 45, 53).  The matters set forth in the request are conclusively established for this action.  *See* Fed. R. Civ. P. 36(b) ("A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. . . . An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding."); *Am. Auto. Ass'n. v. AAA Legal Clinic*, 930 F.2d 1117, 1120 (5th Cir. 1991) (citations omitted) ("An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible.  This conclusive effect applies equally to those admissions made affirmatively and those established by default, even if the matters admitted relate to material facts that defeat a party's claim."); *O'Bryant v. Allstate Ins. Co.*, 107 F.R.D. 45, 48 (D. Conn. 1985) ("To permit plaintiff now to contest in a Rule 56 procedure a matter which has been concluded under Rule 36 would permit plaintiff to subvert the purpose of Rule 36 by simply ignoring it.").

[9] A no-call, no-show refers to the employee not showing up for an assigned shift without giving prior notice to the employer.

Case No: 3:12cv381/MCR/CJK

resign, he would be fired.[10]  Plaintiff notes Thomas Wisar, a white warehouseman, "was a no call no show for at least two straight days and was not terminated."  (Doc. 1, p. 5).

DISCUSSION

<u>Claim for Race Discrimination</u>

Defendant urges that plaintiff cannot establish a prima facie case of racial discrimination.  (Doc. 50, p. 5-6).  When a plaintiff alleges racial discrimination under Title VII, liability depends on whether a plaintiff's protected trait actually motivated the employer's decision.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993)).  In other words, plaintiff's race must have "actually played a role in Defendant's decision-making process and had a determinative influence on the outcome."  *Id.*

Racial discrimination claims under Title VII may be proved through direct evidence or circumstantial evidence.  "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption."  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).  "Therefore, . . . remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination."  *Id.*; *Williamson v. Adventist Health System/Sunbelt, Inc.*, 372 F. App'x 936, 940 (11th Cir. 2010) ("A biased statement, separate in time from the employment decision under challenge, is not direct evidence of discrimination.").  Under this standard, plaintiff has presented no direct evidence

---

[10]The admissions indicating plaintiff told his fellow employees that he was resigning to take another job in Atlanta do not necessarily contradict plaintiff's claim that he was given an ultimatum to resign or be fired.

Case No: 3:12cv381/MCR/CJK

that his race played any role in his departure from Goldring.

Where, as here, there is no direct evidence of intentional race discrimination, plaintiff may utilize the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  Under the *McDonnell Douglas* analysis, the plaintiff carries the initial burden of establishing a prima facie case of race discrimination.  *Id.* at 802.  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment decision.  *Id.*  Once the defendant has proffered a legitimate reason for the applicable adverse employment action, the presumption against the defendant is rebutted, and the plaintiff must come forward with evidence that the reasons are pretextual.  *Id.*

In the racial discrimination context of Title VII, the prima facie case consists of showing:  (1) that the plaintiff belongs to a protected class; (2) that the  plaintiff was qualified to do the job; (3) that the plaintiff was subjected to an adverse employment action; and (4) that the plaintiff's employer treated similarly situated employees outside of plaintiff's class more favorably.  *See Knight v. Baptist Hosp. of Miami Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (other citations omitted).

Although defendant concedes plaintiff belongs to a protected class and was qualified for the job, defendant asserts plaintiff cannot establish a prima facie case of racial discrimination because plaintiff voluntarily resigned from his position and thus did not suffer an adverse employment action.  (Doc. 50, p. 5-6).  "Employee resignations are presumed to be voluntary" and "resignations can be voluntary even where the only alternative to resignation is facing possible termination for cause or criminal charges."  *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir.

1995).  As indicated above, however, viewed in the light most favorable to plaintiff, the facts indicate plaintiff was told that he could resign or be fired.  (Doc. 1, p. 4).  An employee who resigns when confronted with not possible, but imminent termination suffers an adverse employment action.  *See Odom v. Citigroup Global Mkts., Inc.*, 62 F. Supp. 3d 1330, 1339-40 (N.D. Fla. 2014) (finding that for Florida Whistleblower Act claim, employee's choice "between *immediate* resignation and *immediate* termination . . . raised a triable issue of fact as to whether he suffered an adverse employment action").  For summary judgment purposes, then, plaintiff was subjected to an adverse employment action.

Next, defendant argues that plaintiff has not established the "similarly situated" prong of a prima facie case for race discrimination.  Defendant asserts that plaintiff "has provided no evidence to establish that he was treated any differently than any other employee employed by Goldring."  (*Id.*).  To determine whether employees are similarly situated, courts must evaluate "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (citations and quotation marks omitted).  Although the undersigned accepts for present purposes that white warehouseman Thomas Wisar was not fired after two straight "no call no shows," (doc. 1, p. 5), and plaintiff was discharged after one "no call no show," (*id.*, p. 4), plaintiff has not demonstrated that Wisar had a comparable disciplinary record.  On January 26, 2010, plaintiff's Annual Performance Review rated plaintiff's ability to work with others as "Below Target."  (Doc. 50, Schultheis Aff. ¶ 4).  Plaintiff was advised that "to bring his conduct within the appropriate level expected by Goldring, he should bring any complaints he had to the attention of management and not his co-

workers." (*Id.*).  Plaintiff then received a verbal warning for not requesting assistance when he attempted to load a truck at the warehouse.  (*Id.*, ¶ 5).  On March 4, 2011, plaintiff was given a second warning when he offended his co-workers and created a negative work environment.  (*Id..* ¶ 6).  Plaintiff refused to sign the second warning in accordance with company policy.  (*Id.*).  Thus, even after plaintiff was informed that his ability to work with others needed to improve, plaintiff was involved in two additional incidents that further brought that ability into question.  Plaintiff has failed to bring forth evidence showing that Wisar had a similar, long-term disciplinary record or that Wisar failed to correct his behavior after intervention by Goldring's management.  Neither the quantity nor quality of Wisar's misconduct is sufficiently similar to that of Claybrone.  Wisar, therefore, is not a suitable comparator employee, and plaintiff has not established a prima facie case.

Despite plaintiff's failure to establish a prima facie case, he may still survive a motion for summary judgment if he presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision maker."  *Smith v. Lockheed-Martin, Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (citations omitted).  The circumstantial evidence relied upon in lieu of a comparator "must suggest discrimination with force similar to that implied by treating nearly identical offenders differently."  *Bell v. Crown Management, LLC*, 844 F. Supp. 2d 1222, 1234 (S.D. Ala. 2012).  Here, however, plaintiff has failed to offer "a convincing mosaic of circumstantial evidence."  While employed at Goldring from 2008 to 2011, plaintiff heard the n-word used on two occasions.  Plaintiff does not claim those responsible for using the n-word were involved in his termination.  *See Holifield v. Reno*, 115 F.3d 1555, 1563-64 (11th Cir. 1997) ("The biases of one who

neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case.") (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 10 (1st Cir. 1990)).  Plaintiff's conclusory assertion that "[he] believe[s] [he] was forced to resign because of [his] (race) black and for complaining of race discrimination" is insufficient to withstand a motion for summary judgment as to his racial discrimination claim.  *See Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005) ("[A]ffidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment.").

Claim for Retaliation

Likewise, defendant argues plaintiff has not established a prima facie case for race retaliation.  In order for plaintiff to succeed on his race retaliation claim he must show: (1) that plaintiff engaged in statutorily protected expression; (2) that plaintiff suffered an adverse employment action; and (3) that there is some causal relationship between the two events.  *See Holifield*, 115 F.3d at 1561 (citing *Meeks v. Computer Associates Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994)).

To recover on a retaliation claim, "[the plaintiff] need not prove the underlying claim of discrimination which led to [his] protest."  *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir. 1989).  All that is needed on the first prong is a good faith belief that discrimination was present.  *Id.*  Once the first two prongs are met, in order to meet the third prong, plaintiff must show "the protected activity and the negative employment action are not completely unrelated." *E.E.O.C. v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993).  The plaintiff must show the employer was aware of the protected expression at the time

the adverse employment action took place.  *Holifield*, 115 F.3d at 1566 (citing *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).  If plaintiff establishes a prima facie case, the employer must proffer a legitimate business reason for the adverse employment action.  *Reichhold*, 988 F.2d at 1571-72.  If a legitimate reason is shown, the burden falls back on plaintiff to show the legitimate reason is a pretext for retaliation.  *Goldsmith*, 996 F.2d at 1163.

Defendant asserts plaintiff cannot establish any of the elements of a retaliation claim.  First defendant contends plaintiff did not engage in statutorily protected activity.  Title VII protects not just "individuals who have filed formal complaints," but also those "who informally voice complaints to their superiors or who use their employers' internal grievance procedures."  *Rollins v. Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) (citations omitted).  Plaintiff states he filed charges with the EEOC in 2009, 2010, and 2011.  (Doc. 1, p. 5).  Plaintiff also complained of racial discrimination to a Goldring general manager named Joey and to the NAACP.  (*Id.*, p. 4, 5, 10).  The undersigned, therefore, must reject defendant's argument and find that plaintiff engaged in statutorily protected expression.

Assuming statutorily protected expression and an adverse employment action, plaintiff has still failed to produce evidence from which a reasonable jury could find a causal connection between his complaints of racial discrimination and his July 29, 2011 resignation.  First, plaintiff states he filed charges with EEOC in 2009, 2010, and 2011 concerning discrimination.  (Doc. 1, p. 5).  Crucially, however, no evidence indicates Goldring was aware of any of the EEOC complaints before plaintiff's forced resignation.  *See Shannon v. BellSouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir.

2002) (quoting *Gupta v. Fla. Bd. Of Regents*, 212 F.3d 571, 590 (11th Cir. 2000)) ("'To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.'").  Likewise, plaintiff has not shown Goldring was aware of his complaints of discrimination to the NAACP.  (Doc. 1, p. 5; doc. 57, p. 2-3).

In one of his claimed protected expressions, plaintiff complained to a Goldring general manager named Joey about race discrimination.  (Doc. 1, p. 4, 10).  As Joey was the individual who informed plaintiff he could resign or be fired, plaintiff has established that a decision-maker was aware of the protected conduct.  Plaintiff, however, has produced no evidence linking complaints of racial discrimination to the forced resignation.  Roughly four months elapsed between plaintiff's March complaints to the general manager and his July 29, 2011 resignation.  The temporal relationship between plaintiff's complaints and his resignation is insufficient to establish the requisite causal connection.  *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citation omitted) ("[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law."); *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) (finding three month gap between protected expression and adverse action insufficient to show causation).  Because plaintiff failed to provide any evidence of a relationship between his complaints of discrimination and his forced resignation, plaintiff cannot establish a prima facie case of retaliation.  Thus, the defendant's motion for summary judgment as to plaintiff's race retaliation claim should be granted.

Both Claims - No Evidence of Pretext

Additionally, even if plaintiff could make out a prima facie case for either race discrimination or retaliation, Goldring has offered a legitimate, non-discriminatory, and undisputed reason for its actions.  (Doc. 50, p. 10).  Goldring claims that plaintiff's "continued disruptive conduct created a negative work environment." (*Id.*).  As previously described, plaintiff had a disciplinary record with multiple infractions.  *Supra*, p. 15.  Furthermore, plaintiff failed to improve his ability to work with others despite being warned to do so.  Because Goldring offered evidence of legitimate reasons for firing Claybrone, the burden of production shifts to plaintiff to offer evidence that Goldring's proffered reason is a pretext for illegal discrimination. *Wilson v. B/E Aerospace*, *Inc*., 376 F.3d 1079, 1087 (11th Cir. 2004).  The plaintiff can show an employer's reasons were pretextual by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the employer's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence."  *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004)).

At this point, the issue is whether sufficient evidence exists to allow an inference that Goldring's proffered reasons for the adverse action–Claybrone's disruption of the work environment–were merely a pretext for discharging Claybrone because of his race.  Plaintiff has not presented any argument or evidence to rebut defendant's proffered reasons for forcing him to resign.  *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) ("Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on

and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.").  Because plaintiff failed to rebut Goldring's proffered reasons for his discharge, summary judgment in Goldring's favor is appropriate on each of plaintiff's claims.

Accordingly, it is ORDERED:

1.      Defendant's motion to strike (doc. 59) is GRANTED.

And, it is respectfully RECOMMENDED:

1.      That defendant's motion for summary judgment (doc. 50) be GRANTED and that plaintiff's claims be DISMISSED WITH PREJUDICE.

2.      That the clerk be directed to close the file.

At Pensacola, Florida, this 27th day of August, 2015.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.